IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KYLE R. ENTY, | : | |
|     Plaintiff, | : | |
| | : | |
|     v. | : | CIVIL ACTION NO. 23-CV-4651 |
| | : | |
| CITY OF PHILADELPHIA, *et al.*, | : | |
|     Defendants. | : | |

<u>**MEMORANDUM**</u>

**McHUGH, J.**                                                                 **December 22, 2023**

Kyle R. Enty filed a *pro se* Complaint on November 22, 2023, asserting claims against the City of Philadelphia and two City employees, Tanisha Bey and Kristen Abney. Enty also seeks to proceed *in forma pauperis*. For the following reasons, the Court will grant Enty *in forma pauperis* status, and dismiss his Complaint on statutory screening.

## I.     FACTUAL ALLEGATIONS[1]

Mr. Enty's allegations are not entirely clear. He asserts the Court may exercise federal question jurisdiction over his claim based on "equal treatment under the law." (Compl. at 3). He complains about actions undertaken by the Licenses and Inspections Department ("L&I") of the City of Philadelphia. Enty states he is the landlord of a property at 6947 N. 19th Street, from which he was attempting to evict his tenants Danesia Nuttter and Bruce Booker. (*Id*. at 4). The deed to the property is held in the name of Enty's mother. (*Id*.) Enty was told by Defendant Tanisha Bey and one of her L&I coworkers that he could not proceed with the eviction because

---

[1] The factual allegations set forth in this Memorandum are taken from Enty's Complaint (ECF No. 2). The Court adopts the sequential pagination assigned to the Complaint by the CM/ECF docketing system.

his name was not on the deed.  (*Id*.)  Enty apparently told Bey that he is the executor of his

mother's will and would have no problem bringing the probate papers to the L&I office.  (*Id*.)

Bey and a department head allegedly told him that being his mother's executor did not matter.

(*Id*.)

       Mr. Enty then called the "legal department of the City of Philadelphia" to get assistance,

but that office repeated the information he received from L&I that his status as executor was

irrelevant.  (*Id*.)  Enty suspects that this is not legal.[2]  (*Id*.)

       Enty also describes an incident with the Department of Human Services in which he

notified that agency that the children of Danesia Nuttter were living in the house while it had a

sewage issue.  (*Id*.)  Apparently, a pipe in the house is cracked and, when someone flushes a

toilet in the house, soiled water gushes onto the floor of the basement.  (*Id*. at 4-5.)  Enty talked

with a plumber who provided an estimate of $2,700 to fix the problem.  (*Id*. at 5.)  The rent he

charges his tenants is $2,000 per month.  (*Id*.)  The rent and a $700 annuity are Enty's only

income.  (*Id*.)  When he called the Department of Human Services, a case worker who responded

was Defendant Kristen Abney.  (*Id*.)  Enty told Abney the story and she also told him he would

have to go through the eviction process to get the tenants out of the house.  (*Id*.)  He reminded

Abney that children were living in the sewage infested house but Abney informed him "that the

kids were not that young and their presence in a septic environment was not that big a deal."

(*Id*.)  Enty was "flabbergasted" by her response.  (*Id*.)

---

       [2] Enty asserts a belief that such a law does not exist, but he is in a situation where he has
to take their word for it since he has not been able to secure a lawyer to help him "because they
don't practice law in the City of Philadelphia despite being certified in the State of Pa."  (Compl.
at 4.)

Mr. Enty seeks as relief in his case that the City pay him the full price of the house "that I'm going to lose," namely $272,736.00.  (*Id.*)  He claims he will lose his deceased mother's house "because the staff of the City is trying to protect their [indecipherable] from the consequences of their actions."  (*Id.*)  He names the City as a Defendant asserting that the City "is responsible for what their [sic] employees do."  (*Id.*)  Enty also seeks compensatory damages of $25,000.

## II.    STANDARD OF REVIEW

The Court grants Enty leave to proceed *in forma pauperis*.  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021).  "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'"  *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.  As Enty is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

III.    **DISCUSSION**

Mr. Enty asserts constitutional claims against the Defendants.  The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983.  "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors."  *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Groman v. Twp. of Manalapan*, 47 F .3d 628, 638 (3d Cir. 1995) ("The color of state law element is a threshold issue; there is no liability under § 1983 for those not acting under color of law.").

A.    **Claims Against the City of Philadelphia**

Enty has named the City of Philadelphia as a Defendant alleging that it is responsible for what its employees do.  In other words, he seeks to hold the City vicariously liable under a theory of *respondeat superior*.  Local governments can be liable as "persons" under § 1983, however, this liability extends only to "their *own* illegal acts."  *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (emphasis in original) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)); *see Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 665-83 (1978).  This limitation is based on the well-established principle that municipalities "are not vicariously liable under § 1983 for their employees' actions."  *Connick*, 563 U.S. at 60; *Monell*, 436 U.S. at 691 ("[A] municipality cannot be held liable *solely* because it employs a tortfeasor — or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory.") (emphasis in original).

Rather, to state a plausible claim for municipal liability, a plaintiff must allege that the defendant's policies or customs caused the alleged constitutional violation.  *See Monell*, 436 U.S. at 694; *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003).  The plaintiff "must identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the pleading standard.  *McTernan v. City of York,* 564 F.3d 636, 658 (3d Cir. 2009).  It is not enough, however, to allege the existence of a policy or custom.  "A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries."  *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)).  This can be done "by demonstrating an 'affirmative link' between the policy or custom and the particular constitutional violation" alleged.  *Id.*  Allegations that simply paraphrase the standard for municipal liability, are too vague and generalized to support a claim against the City.  *See, e.g.*, *Szerensci v. Shimshock*, No. 20-1296, 2021 WL 4480172, at *7 (W.D. Pa. Sept. 30, 2021) ("Plaintiffs' conclusory allegation, which generally paraphrases the relevant standard, is insufficient to state a claim for § 1983 liability under *Monell*.") (citing cases).

Because Enty has not asserted that he was injured due to a policy of the City and that the policy was the proximate cause of his injury, his claim against the City is not plausible and must be dismissed.

### B.    Claims Against Municipal Employees Bey and Abney

#### 1.    Equal Protection

Enty appears to raise federal constitutional claims against Defendants Bey and Abney. He alleges he has not received "equal treatment under the law."  The Court understands this statement to invoke the Equal Protection Clause of the Fourteenth Amendment which "commands that no State shall 'deny to any person within its jurisdiction the equal protection of

the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). To establish an equal protection violation, a person must allege that he was treated differently than others who are similarly situated, "and that this different treatment was the result of intentional discrimination based on his membership in a protected class." *Mack v. Warden Loretto FCI*, 839 F.3d 286 (3d Cir. 2016) (citing *Hassan v. City of New York*, 804 F.3d 277, 294, 298 (3d Cir. 2015)). "Persons are 'similarly situated' for purposes of an equal protection claim when 'they are alike in all relevant aspects.'" *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008) (emphasis omitted). Additionally, to state a race-based equal protection claim, a plaintiff must allege that defendants were motivated by racial animus. *W.B. v. Matula*, 67 F.3d 484, 503 (3d Cir. 1995) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *Pratt v. Thornburgh*, 807 F.2d 355, 357 (3d Cir. 1986)). Enty's claim fails because he does not allege that Bey and Abney treated him differently from others who are in a similar situation or that he was treated differently based on his membership in a protected class and the Defendants acted out of racial animus. Accordingly, the Equal Protection claim is not plausible and will be dismissed.

### 2.      Due Process

Enty may also be attempting to raise a due process claim based on Bey and Abney's statements that he could not evict his tenants because he was not the named owner of the property on the deed. Three kinds of § 1983 claims may be brought under the Due Process Clause of the Fourteenth Amendment. *Zinermon v. Burch,* 494 U.S. 113, 125 (1990). First, a plaintiff may bring suit under § 1983 for a violation of his specific rights as guaranteed by the Bill of Rights. *Id.* Second, a plaintiff may assert a Fourteenth Amendment claim under the

"procedural" aspect of the Due Process Clause, which guarantees fair procedure for the deprivation of a constitutionally protected interest in life, liberty, or property. *Id.* The procedural aspect of the Due Process Clause guarantees the availability of certain procedural mechanisms, typically the right to notice and a hearing before the government can deprive an individual of a liberty or property interest. To establish a procedural due process violation, a person must first demonstrate that he has been deprived of a constitutionally protected property or liberty interest. *Daniels v. Williams,* 474 U.S. 327, 339 (1986); *Renchenski v. Williams,* 622 F.3d 315, 325 (3d Cir. 2010). Only upon finding that a protected interest is asserted does a court consider the constitutional sufficiency of the procedures associated with the interest. If a liberty or property interest is found, the next step in the due process inquiry is to determine what process is due. Due process is not a technical conception with a fixed content unrelated to time, place, and circumstance. *Gilbert v. Homar,* 520 U.S. 924, 930 (1997). Rather, "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer,* 408 U.S. 471, 481 (1972).

Third, a plaintiff may assert a claim under the "substantive" prong of the Due Process Clause, which bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them. *Zinermon,* 494 U.S. at 125 (quoting *Daniels,* 474 U.S. at 331)). The substantive component of the Due Process Clause can only be violated by governmental employees when their conduct amounts to an abuse of official power that "shocks the conscience." *Fagan v. City of Vineland*, 22 F.3d 1296, 1303 (3d Cir. 1994).

Enty's factual contentions do not appear to assert a violation of a specific right guaranteed by the Bill of Rights. Rather, he appears to assert a claim under the "procedural" aspect of the Due Process Clause, which guarantees fair procedure for the deprivation of a

constitutionally protected interest in life, liberty, or property, because, liberally construed, City officials would not accept his executorship of his mother's estate as providing him a property interest in the home so that he could evict the tenants.  He may also be alleging that the City officials acted arbitrarily.

However, his claims may be pigeonholed, the Complaint fails to assert plausible claims against Defendants Bey and Abney.  For the procedural due process claim, as employees of L&I and DHS respectively, Bey and Abney appear to have no role in the procedures by which tenants can be evicted from real property and, concomitantly, no role affecting a property right possessed by the landlord.  Rather, it is the Court of Common Pleas that has the power to grant a landlord an order to evict a tenant by the landlord's following the procedures set forth in the Landlord and Tenant Act of 1951, 68 P.S. § 250.101-250.602.  Under the act, an eviction process begins with a landlord "desirous of repossessing real property from a tenant" notifying the tenant in writing to quit the property if the lease has ended, been breached, or if there has been a nonpayment of rent. *Id*., § 250.501(a).  Thereafter, if the premises are not vacated, upon the filing of a complaint, the Court issues a summons directing the tenant to appear for a hearing.  *Id*. §§ 250.502-503.  If the complaint is proven, the Court may enter a judgment ordering the real property delivered  to the landlord, award damages, and the payment of unpaid rent.  *Id*. § 250.503(a).  A tenant may appeal an eviction order to the Court of Common Pleas.[3]  *Id*. § 250.513.  Neither L&I,  DHS, nor its employees appear to have any role in this process and Enty fails to allege any plausible basis

---

[3] Section 250.104 of the Act sets forth the rights of persons acquiring title by descent or purchase, providing that such persons "shall have the same rights, powers and remedies in relation to the property as the person from whom title was acquired."  68 P.S. § 250.104

to conclude that they violated his procedural due process rights through their interactions with him.  He also fails to allege that they acted in an arbitrary manner.

As to a substantive due process claim, Enty's allegations – that (1) he told Abney the story about the failed sewage problem, (2) she responded that he would have to go through the eviction process to get the tenants out of the house, and (3) downplayed the danger to the children living in the home, leaving Enty "flabbergasted" by her response – fail to rise to the level of conscious-shocking behavior.  First, Enty fails to allege what a DHS caseworker like Abney was possibly empowered to do in response to the information about the sewage leak in connection with Enty's attempt to evict Nuttter and Booker.[4]  Second, as explained, Enty's proper course to get help to evict the tenants – both the adults and the children - was the court system, not DHS.  Abney's advice to follow eviction proceedings to remove the tenants so Enty could address the sewage problem was not arbitrary conduct.  Accordingly, the claims against the individual Defendants are also dismissed.

## IV.    CONCLUSION

For the stated reasons, the Court will grant Enty leave to proceed *in forma pauperis* and dismiss the Complaint on statutory screening pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  Because any attempt at amendment would prove futile, the dismissal will be with prejudice.  *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002) (holding that district courts should dismiss *pro se* complaints under the PLRA with leave to amend "unless amendment would be

---

[4] While unclear, Enty may be attempting to assert that Abney should have removed the children from property, but that would not affect the tenancy of the parents.

inequitable or futile.").  Here, the underlying facts involve Mr. Enty's encounters with City employees concerning a rental property that he owns.  His dissatisfaction with their answers and advice is inextricably tied to the unique facts of this case, and I can conceive of no broad City policy and no class of comparators that could plausibly give rise to a claim.

Moreover, Mr. Enty's attempt to pursue fruitless Constitutional litigation will be a distraction from where he needs to direct his attention, which is to assert his rights as a landlord in Philadelphia Municipal Court, provided that he is in fact the lawful heir to the property, and can cure any Code violations  (such as a leaking sewage pipe) that might forestall eviction.

An Order will be entered separately.

**BY THE COURT:**

_/s/ Gerald Austin McHugh_
**GERALD A. MCHUGH, J.**